**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4774
_____

BARRY DOOLEY, on behalf of himself
and those similarly situated,
                                                    Appellant

v.

CPR RESTORATION & CLEANING SERVICES LLC;
MICHAEL FINGERMAN; JOHN DOES 1-10
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-13-cv-01448)
District Judge: Honorable Legrome D. Davis
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 24. 2014

BEFORE: FUENTES, GREENBERG AND COWEN, <u>Circuit Judges</u>

(Filed: October 29, 2014)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

COWEN, Circuit Judge.

The plaintiff-appellant, Barry Dooley ("Appellant"), appeals an order denying his motion for summary judgment and granting a motion for summary judgment filed by CPR Restoration & Cleaning Services LLC and Michael Fingerman ("Appellees"), the defendants-appellees. We will affirm.

**I.**

Because we write solely for the parties, we will only set forth the facts necessary to inform our analysis.

Appellant was employed by CPR Restoration & Cleaning Services, LLC ("CPR") as an "emergency responder." In this capacity, he monitored a scanner for reports of any fires in his vicinity. Upon hearing a report, he and other emergency responders would rush to the scene. Speed to the scene was essential because of "an unwritten rule amongst [CPR and its] competitors that the first one to arrive at the scene would be the first one to have the opportunity to speak with the property owner once the fire marshal cleared the scene." (Dooley Dep. 42:9-14.) When multiple properties were damaged, the first company to arrive would have first pick of which property to solicit.

If Appellant was the first CPR responder to arrive at the scene of a fire he was designated the "lead." As lead responder, he was responsible for selling CPR's services to affected property owners. The remaining responders helped the lead sell these services and also performed some of the services sold. As lead, Appellant followed a guideline that he would only sell services that his team could provide. This included "[b]oard-ups,

2

securing the property, roof tarps, [and] placing equipment, such as air scrubbers or drying fans." (Dooley Dep. 26:10-18, 28:5-14.) If these services were successfully sold to a property owner, the lead and the other emergency responders would then perform the services sold. He also sometimes performed board-ups that had been referred to CPR by other people, such as one of the local fire chiefs.

During his time at CPR, Appellant regularly worked more than forty hours per week, although the parties dispute how many hours of overtime he worked. He was paid salary and commission. Initially, his pay was $650 per week in salary for sitting in his truck awaiting reports of fires, although that was later increased to $700 per week. This salary was not tied to the number of hours that he worked. In addition to his salary, Appellant received six percent of CPR's net billings for board-up services that he sold, but only if he also performed the board-up himself. He received two and a half percent of net billings for all the other services he sold, regardless of whether he performed them himself, as well as ten dollars per air scrubber that he delivered. According to CPR's records, most of Appellant's compensation came from his salary. The district court noted that he received 11.1% of his total compensation in the form of commission payments.

In considering the parties' cross-motions for summary judgment, the district court analyzed Appellant's FLSA claim pursuant to the Department of Labor's ("DOL") regulations. It concluded that he was employed as an outside salesperson and was therefore exempt from the FLSA's overtime provisions. The district court accordingly

granted Appellees' motion for summary judgment and denied Appellant's motion. The current appeal followed.

## II.

Our review of the district court's grant of summary judgment is plenary. *See Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220 (2000). We apply the same standard as the district court, specifically, "[s]ummary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 322 n.2 (3d Cir. 2005) (internal quotation marks and citations omitted).

Appellant's federal claim arises under the FLSA. The FLSA provides that covered employers may not employ someone in a non-exempt position "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). A person "employed . . . in the capacity of outside salesman" is exempted from this requirement. 29 U.S.C. § 213(a)(1).

"Congress did not define the term 'outside salesman,' but it delegated authority to the DOL to issue regulations 'from time to time' to 'defin[e] and delimi[t]' the term." *Christopher v. SmithKline Beecham Corp.,* 132 S. Ct. 2156, 2162 (2012) (all alterations in original). Pursuant to this authority, the DOL classifies a worker as "employed in the

4

capacity of outside salesman" if, in relevant part, (1) the employee's primary duty is "obtaining orders or contacts for services," and (2) the employee is "customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a).

The term "primary duty" is defined in the regulations as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.* The employee's "job title alone is insufficient to establish the exempt status of an employee." 29 C.F.R. § 541.2. Rather, an employee's status "must be determined on the basis of whether the employee's salary and duties meet the requirements" for exemption. *Id.*

## III.

There is no dispute here that Appellant is "customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a). Rather, the parties focus their attention on whether his primary duty is "obtaining orders or contacts for services." *Id.* The DOL regulations outline four factors relevant to this determination: (1) "the relative importance of the exempt duties as compared with other types of duties, (2) the amount of time spent performing exempt work, (3) the employee's relative freedom from direct supervision, and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of

nonexempt work performed by the employee." 29 C.F.R. § 541.700(a). Appellant asks this court to consider factors in addition to those articulated by the DOL in its regulations. We see no reason to do so here.

A. Relative Importance of the Exempt Duties Compared with Other Types of Duties

Appellant testified that his salary was "for sitting in the truck." (Dooley Dep. 31:9-14.) He was "required to get [to the scene of a fire] as fast as [he could], no matter what," so that he could "beat the other companies there." (*Id.* at 21:20-22.) It was important to CPR that Appellant arrive before any other company, because it would entitle him to "approach a homeowner and try to get them to sign a work authorization form for a board-up," which could, in turn, lead to the sale of additional services. (*Id.* at 22:6-7; Moulder Dep. 78:19-23.) The importance that CPR placed on Appellant's sales activities is further highlighted by his authority to commit the company to paying the owner's insurance deductible if he thought that commitment was necessary to close the sale. As Appellant testified, he "[did] whatever it [took] to get a job." (Dooley Dep. 115:22-24.)

There is nothing in the record to suggest, as Appellant does, that CPR paid him to sit in his truck because it needed him to perform physical labor. To the contrary, the record establishes that board-ups were not profitable for CPR and the real value lay in Appellant's ability to secure a work authorization. (*See* Moulder Dep. 78:19-23.) ("Placing equipment and board up are not profitable services for CPR. . . . They're an

6

investment in the future sales for us."). We conclude that Appellant's task of monitoring fire reports was to further CPR's sales goals and these exempt duties were more important than his non-exempt duties.

B.     Amount of Time Spent Performing Exempt Work

Appellant testified that he spent a minimum of 60 hours each week sitting in his truck monitoring fire reports. Because we have concluded that this time was in furtherance of his sales efforts, and is therefore exempt, it is undisputed that Appellant spent a majority of his time performing exempt work.

C.     Employee's Relative Freedom from Direct Supervision

The record also demonstrates that Appellant enjoyed relative freedom from direct supervision. He monitored fire reports, responded to fires, and sold and performed services at the scenes of fires, all without supervision. He also exercised substantial discretion over whether and how to sell CPR's services to property owners. He alone made the initial determination as to whether he believed a property owner was insured and he had discretion to commit CPR to paying the owner's insurance deductible. Moreover, when Appellant sold CPR's services to a property owner, he was authorized to "sign the contract and call remediation services" on CPR's behalf without any further approval, as long as there was "soot or fire damage to a property." (Fingerman Dep. 39:15-40:6.)

7

D.    The Relationship Between the Employee's Salary and the Wages Paid to Other Employees for the Kind of Non-Exempt Work Performed by the Employee

As the district court noted, "[n]either party has presented evidence of how much other employees were paid to perform remediation services." *Dooley v. CPR Restoration & Cleaning*, No. 13-cv-1448 (E.D.Pa. Dec. 18, 2013).

**IV.**

Having reviewed Appellant's salary and duties, we agree with the district court's conclusion that Appellant was an outside salesperson under the FLSA. The order of the district court entered on December 18, 2013 will be affirmed.